1  Craig C. Marchiando, Esq. (SBN 283829)
2  Leonard A. Bennett, Esq. (*pro hac vice*)
   **CONSUMER LITIGATION ASSOCIATES, P.C.**
3  Four Embarcadero Center, Suite 1400
   San Francisco, CA 94111
4  Telephone: (757) 930-3660
   Facsimile: (757) 930-3662
5  Email: lenbennett@clalegal.com
   Email: craig@clalegal.com
6
7  *Attorneys for Plaintiffs and the Class*
   [*Additional Counsel on Signature Page*]

8
                    **UNITED STATES DISTRICT COURT**
9                  **NORTHERN DISTRICT OF CALIFORNIA**
                      **SAN FRANCISCO DIVISION**

10 ELETTRA MEEKS, JOSEPH DELACRUZ,          Case No.: 3:21-cv-07727-CRB
   STEPHANIE LAGUNA, and AMBER
11 LEONARD, *on behalf of themselves and others*  **PLAINTIFFS' NOTICE OF MOTION**
   *similarly situated*,                      **AND MOTION FOR PRELIMINARY**
12                                            **APPROVAL OF CLASS ACTION**
           Plaintiffs,                        **SETTLEMENT AND FOR**
13                                            **CERTIFICATION OF SETTLEMENT**
                                              **CLASS**
14 v.
                                              Date:    Aug. 18, 2023
15 EQUIFAX INFORMATION SERVICES, LLC,        Time:    1:00 p.m.
                                              Judge:   Hon. Charles R. Breyer
16         Defendant.

17 **TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

18         **PLEASE TAKE NOTICE** that on **August 18, 2023 at 1:00 p.m.,** or as soon thereafter as this

19 matter may be heard, by videoconference before the Honorable Charles R. Breyer, Plaintiffs Elettra Meeks,

20 Joseph Delacruz, Stephanie Laguna, and Amber Leonard will move this Court to preliminarily approve the

21 Settlement reached in this case, the terms of which are more specifically described in the accompanying

22 Memorandum of Points and Authorities filed in support of this Motion.

23         This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and

24 Authorities, the Settlement Agreement, the Declarations of Leonard Bennett and Kristi Kelly and exhibits

25 thereto, the pleadings and papers on file in this Action, and any other such evidence and argument as the

26 Court may consider. Defendant Equifax Information Services, Inc. does not oppose this Motion.

27

---

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT -
Case No. 3:21-cv-07727-CRB

Dated: July 14, 2023

Respectfully submitted,

By:      /s/ *Craig C. Marchiando*

Craig C. Marchiando (SBN 283829)
Leonard A. Bennett (pro hac vice)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

Kristi C. Kelly, Esq. (pro hac vice)
Andrew Guzzo, Esq. (pro hac vice)
**KELLY GUZZO PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com

*Attorneys for Plaintiffs*

## MEMORANDUM OF POINTS AND AUTHORITIES

### TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................... 1

II.  BACKGROUND ................................................................................................ 2

III. THE SETTLEMENT AGREEMENT ................................................................ 4

    A.   The Settlement Class.................................................................................. 5

        1.   The Settlement Class obtains significant injunctive and cash relief. ............... 6

        2.   Class Administration and Notice Plan ............................................. 7

        3.   Attorneys' fees and Service Awards for Representation of the Settlement Class 8

        4.   The Settlement is in line with similar cases ...................................... 9

IV.  LEGAL STANDARDS FOR PRELIMINARY APPROVAL ............................ 9

V.   ARGUMENTS AND AUTHORITIES ............................................................ 11

    A.   The Proposed Settlement Warrants Preliminary Approval.................................... 11

        1.   The Settlement is the product of good-faith, informed, arms'-length negotiations ............................................................................... 12

        2.   The Settlement is fair, adequate, and reasonable ........................................... 13

            a.   The strengths and risks of Plaintiffs' case and likely duration of further litigation ...................................................................... 14

            b.   The amount offered in settlement ...................................................... 15

            c.   The allocation of the Settlement ...................................................... 16

            d.   The extent of discovery completed and stage of proceedings ........... 17

            e.   The views of Class Counsel .............................................................. 17

            f.   Government participant and Class Member reaction ......................... 17

        3.   The Class Representatives and Class Counsel have adequately represented the proposed Class ................................................................. 18

        4.   The proposed Fee and Expense Award is fair and reasonable...................... 18

B.  Certification Of The Settlement Class Is Appropriate .......................................... 20

    1.  The Settlement Class Meets the Requirements of Rule 23(a) ...................... 20

    2.  The Settlement Class satisfies the requirements of Rule 23(b)(3) ................. 21

C.  The Court Should Approve The Proposed Notice Plan ........................................ 22

    1.  The proposed notice plan is adequate and warrants preliminary approval ..... 22

VI.  CONCLUSION ................................................................................................................ 25

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT -
Case No. 3:21-cv-07727-CRB

ii

# TABLE OF AUTHORITIES

**C**ASES

*Adams v. Inter-Con Sec. Sys. Inc.*,
No. C-06-05248-MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ......................12

*Anixter v. Home–Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) .........................................................................................14

*Avina v. Marriott Vacations Worldwide Corp.*,
No. SACV18685JVSJPRX, 2019 WL 8163642, at *5 (C.D. Cal. Oct. 25, 2019) ........................10, 17

*Behfarin v. Pruco Life Ins. Co.*,
No. CV 17-5290-MWF-FFMx, 2019 WL 7188575, at *5 (C.D. Cal. Nov. 26, 2019) ......................10

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
603 F.2d 263 (2d Cir.1979)..............................................................................................15

*Bias v. Wells Fargo & Co.*,
312 F.R.D. 528, 537 (N.D. Cal. 2015) ..............................................................................20

*Bravo v. Gale Triangle, Inc.*,
No. CV 16-03347 BRO (GJSx), 2017 WL 708766, at *19 (C.D. Cal. Feb. 16, 2017) ......................19

*Brice v. Haynes Invs., LLC.*,
No. 18-CV-01200-WHO, 2021 WL 1916466, at *5 (N.D. Cal. Apr. 23, 2021).........................22

*Brice v. Plain Green, LLC*,
372 F. Supp. 3d 955 (N.D. Cal. 2019) ................................................................................3

*Briseno v. Henderson*,
998 F.3d 1014, 1026-28 (9th Cir. 2021) ............................................................................11

*Browning v. Yahoo! Inc.*,
C04-01463 HRL, 2006 WL 3826714 (N.D. Cal. Dec. 27, 2006).........................................24

*Celano v. Marriott Int'l Inc.*,
242 F.R.D. 544, 548-49 (N.D. Cal. 2007) ..........................................................................20

*Chalian v. CVS Pharmacy, Inc.*,
No. CV 16-08979 AB (AGRx), 2020 WL 7414739, at *2 (C.D. Cal. Nov. 20, 2020).................24

*Chester v. TJX Cos.*, No. 5:15-cv-01437-ODW(DTB),
2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017) ............................................................15

*Churchill Vill., L.L.C. v. Gen. Elec.,*
    361 F.3d 566, 575 (9th Cir. 2004) ............................................................................10

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1269, 1276 (9th Cir. 1992) ..........................................................................9

*Coborst v. BRE Props.,*
    No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923, at *12 (S.D. Cal. Nov. 9, 2011) ..........12

*Commonwealth of Penn. v. Think Fin., Inc.,*
    2016 WL 183289, at *1 (E.D. Pa. Jan. 14, 2016) .......................................................2

*Curtis-Bauer v. Morgan Stanley & Co., Inc.,*
    2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ............................................................15

*Custom LED, LLC v. eBay, Inc.,*
    No. 12-cv-00350-JST, 2014 WL 2916871 (N.D. Cal. June 24, 2014) ...........................16

*Dennis v. Kellogg Co.,*
    No. 09-cv-1786-L(WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013) ..............15

*Dreher v. Experian Info. Sols., Inc.,*
    856 F.3d 337, 340 (4th Cir. 2017) ...........................................................................14

*Ellis v. Costco Wholesale Corp.,*
    657 F.3d 970, 985 (9th Cir. 2011) ...........................................................................21

*Fowler v. Birmingham News Co.,*
    608 F.2d 1055, 1059 (5th Cir. 1979) ........................................................................22

*Garner v. State Farm. Mut. Auto. Ins. Co.,*
    2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ...........................................................14

*Gibbs v. Haynes Invs., LLC,*
    368 F. Supp. 3d 901 (E.D. Va. 2019), *aff'd*, 967 F.3d 332 (4th Cir. 2020) ..................3

*Gibbs v. Plain Green, LLC,*
    331 F. Supp. 3d 518 (E.D. Va. 2018) ........................................................................3

*Gibbs v. Plain Green, LLC,*
    No. 3:17-cv-495 (E.D. Va. Dec. 13, 2019).................................................................3

*Gingras v. Think Fin., Inc.,*
    922 F.3d 112 (2d Cir. 2019) ....................................................................................3

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011, 1026 (9th Cir. 1998) .............................................. 10, 11, 14, 21

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497, 508 (9th Cir. 1992) ...................................................................20

*Harris v. Vector Mktg. Corp.,*
    No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) .........................19

*Hickcox-Huffman v. U.S. Airways, Inc.,*
    No. 10-cv-05193, 2019 WL 1571877, at *2 (N.D. Cal. April 11, 2019) ..........................19

*Hillman v. Lexicon Consulting, Inc.,*
    No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. Apr. 27, 2017) .................17

*Hughes Tool Co. v. Trans World Airlines,*
    409 U.S. 363 (1973).....................................................................................15

*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935, 964, 947 (9th Cir. 2011) ........................................... 10, 12, 13, 14

*In re Facebook Internet Tracking Litig.,*
    No. 5:12-MD-02314-EJD, 2022 WL 16902426, at *5 (N.D. Cal. Nov. 10, 2022) ..........................16

*In re Mego Fin. Corp.,*
    213 F.3d 454, 458 (9th Cir. 2000) ................................................................10

*In re Online DVD Rental Antitrust Litigation,*
    No. 09-md-02029 (N.D. Cal. Aug. 29, 2011) .....................................................24

*In re Online DVD-Rental Antitrust Litig.,*
    779 F.3d 934, 946 (9th Cir. 2015) ................................................................23

*In re Syncor ERISA Litig.,*
    516 F.3d 1095, 1101 (9th Cir. 2008) ...............................................................9

*Johnson v. Triple Leaf Tea Inc.,*
    2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ...................................................15

*Lane v. Facebook, Inc.,*
    696 F. 3d 811, 826 (9th Cir. 2012) ...............................................................24

*Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.,*
    244 F.3d 1152, 1163 (9th Cir. 2001) .............................................................22

*Longest v. Green Tree Servicing LLC,*
    308 F.R.D. 310, 325 (C.D. Cal. 2015) ...........................................................21

*Ma v. Covidien Holding, Inc.,*
    No. SACV 12-02161, 2014 WL 360196, at *10 (C.D. Cal. Jan. 31, 2014) .......................10

*Maine State Ret. Sys. V. Countrywide Fin. Corp.*,
    No. 2:10-cv-00302-MRP(MANx), 2013 WL 6577020, at *12 (C.D. Cal. Dec. 5, 2013) ..................12

*Meeks v. Consumer Adjustment Co., Inc.*,
    No. 3:21-cv-03266-VC (N.D. Cal.) .........................................................................................................7

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523, 528 (C.D. Cal. 2004) ...............................................................................................17

*Noroma v. Home Point Fin. Corp.*,
    No. 17-cv-07205, 2019 WL 1589980, at *4 (N.D. Cal. April 12, 2019) ...........................................19

*Paz v. AG Adriano Goldschmeid, Inc.*,
    No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016)...........................15

*Perks v. Activehours, Inc.*,
    No. 5:19-cv-05543-BLF, 2021 WL 1146038, at *2 (N.D. Cal. Mar. 25, 2021) .................................23

*Ramirez v. Trans Union, LLC*,
    No. 12-CV-00632-JSC, 2022 WL 2817588, at *2 (N.D. Cal. July 19, 2022) ....................................16

*Rannis v. Recchia*,
    380 Fed. App'x 646, 651 (9th Cir. 2010) ..........................................................................................20

*Rodriguez v. W. Publ'g Corp.*,
    563 F. 3d 948, 962 (9th Cir. 2009) ....................................................................................... 12, 14, 24

*Russell v. Kohl's Dep't Stores, Inc.*,
    755 Fed. App'x 605, 608 (9th Cir. 2018) ..........................................................................................14

*Senne v. Kansas City Royals Baseball Corp.*,
    No. 14-cv-00608-JCS, 2021 WL 134889, at *1 (N.D. Cal. Jan. 14, 2021) .......................................23

*Spann v. J.C. Penney Corp.*,
    314 F.R.D. 312, 319 (C.D. Cal. 2016) ...............................................................................................10

*Tait v. BSH Home Appliances Corp.*,
    No. SACV 10-0711-DOC (ANx), 2015 WL 4537463, at *6 (C.D. Cal. July 27, 2015)...................18

*Tyson Foods, Inc. v.*
    *Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ......................................................................................22

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338, 349, 350 (2011) ...........................................................................................................20

*Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    No. 16-MD-02752, 2019 U.S. Dist. LEXIS 15034 (N.D. Cal. Jan. 30, 2019) .................................10

## STATUTES

15 U.S.C. § 1681i ...........................................................................................................5
15 U.S.C. § 1681o ..........................................................................................................5
15 U.S.C. § 1681c(a) .......................................................................................................6
15 U.S.C. § 1681e(a) .......................................................................................................6
15 U.S.C. § 1681e(b) .............................................................................................6, 7, 10

## RULES

FED. R. CIV. P. 23 ........................................................................................................4, 9
FED. R. CIV. P. 23(a) ...........................................................................................19, 20, 21
F FED. R. CIV. P. 23 (b)(3). ..................................................................................19, 21, 22
FED. R. CIV. P. 23(e) ...................................................................10, 11, 12, 16, 17 18, 19

## TREATISES

*Newberg on Class Actions*, § 11.41 (4th ed. 2013) ......................................................12

## I.    INTRODUCTION.

Plaintiffs Elettra Meeks, Joseph Delacruz, Stephanie Laguna, and Amber Leonard, individually and on behalf of the proposed Settlement Class,[1] seek preliminary approval of a proposed Settlement of claims against Defendant Equifax Information Services, Inc. The Settlement Agreement, if approved, will pay each Settlement Class Member who submits a valid claim $500, resolving the claims of Plaintiffs and Settlement Class Members deriving from Equifax's alleged violations of state and federal law through its reporting of certain defaulted debts stemming from Great Plains, Plain Green, and MobiLoan internet loans. Apart from these cash payments, the Settlement also includes important and valuable nonmonetary consideration, as Equifax has agreed to certain practice changes—both retrospective and prospective in the form of a Court-ordered injunction—relating to the reporting of the loans at issue.

Beyond the relief to Settlement Class Members, Equifax will separately pay for notice and administration costs, any Service Awards to the Named Plaintiffs and any attorneys' fees and costs the Court may approve as part of the settlement. The Parties have agreed on two components of attorneys' fees for Class Counsel, pending Court approval: (1) an award of $300,000 in attorneys' fees for the injunctive relief achieved; and (2) a percentage of the total amount of claims paid to Settlement Class Members. Equifax has also agreed, again pending Court approval, to pay Service Awards of up to $5,000 per Named Plaintiff.

This valuable relief provided by the Settlement was secured with the assistance of private mediation conducted by retired Judge Diane Welsh of JAMS in Philadelphia, which was supplemented by extensive arms'-length negotiations by experienced and informed counsel. The proposed Settlement warrants preliminary approval, as the terms are fair, reasonable, and adequate. The Settlement provides for adequate compensation to the class considering the litigation and collection risks, maximizes redemption by providing robust notice to Settlement Class Members, including subsequent reminder notices of the need to submit claims, and provides for valuable nonmonetary consideration. Accordingly, Plaintiffs request that

---

[1] Unless otherwise specifically defined herein, all capitalized terms have the same meanings as those set forth in the parties' Settlement Agreement ("SA"), attached as Exhibit 1.

the Court (1) preliminarily approve the proposed Settlement, (2) certify the Settlement Class for settlement purposes only, (3) appoint Plaintiffs Elettra Meeks, Joseph Delacruz, Stephanie Laguna, and Amber Leonard as Class Representatives (collectively referred to as "Named Plaintiffs"), (4) appoint Kristi Kelly, Andrew Guzzo and Casey Nash of Kelly Guzzo, PLC, Matthew Wessler of Gupta Wessler, PLC and Leonard A. Bennett and Craig Marchiando of Consumer Litigation Associates, P.C. as Class Counsel, (5) appoint Continental DataLogix, LLC as the Settlement Administrator, (6) order that Class Notice be distributed to the Settlement Class, and (7) schedule a Final Approval Hearing.

Equifax does not oppose the relief sought in this Motion.

## II.    BACKGROUND.

This litigation arises from alleged violations of state and federal laws related to Equifax's reporting of information relating to online short-term loans that carried triple-digit interest rates. In the early 2000s, a company called Think Finance began offering usurious and illegal high-interest loans over the internet to consumers throughout the United States. Often, these loans charged around 400% APR—more than 40 times the legal limit in states like California. Think Finance employed what has now become known as a "tribal lending model." It purported to form three lending entities—called Plain Green, Great Plains Lending, and MobiLoans—under the laws of the Chippewa Cree, Otoe-Missouria, and Tunica-Biloxi tribes, and then claimed that all of the lending done through these entities was immune from federal and state laws under tribal sovereign immunity.

These companies were in fact little more than fronts. Although the tribal entities received a nominal flat fee from the loans, they had no control over the income, expenses, or day-to-day operations of the business. That control was instead retained by Think Finance, which for nearly eight years operated the entire enterprise and reaped virtually all the profits from the illegal lending operation.

Beginning in 2013, however, Think Finance's lending enterprise unraveled. Federal and state regulators independently brought enforcement actions against the companies, alleging that Think Finance and its affiliates ran a common enterprise designed to offer and collect online installment loans that violated state usury laws. *See, e.g., Commonwealth of Penn. v. Think Fin., Inc.*, 2016 WL 183289, at *1 (E.D. Pa. Jan. 14, 2016). And the operation also faced several private enforcement actions as well. *See, e.g., Gingras v.*

1   *Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019); *Gibbs v. Haynes Invs., LLC*, 368 F. Supp. 3d 901 (E.D. Va.

2   2019), *aff'd*, 967 F.3d 332 (4th Cir. 2020); *Brice v. Plain Green, LLC*, 372 F. Supp. 3d 955 (N.D. Cal. 2019);

3   *Gibbs v. Plain Green, LLC*, 331 F. Supp. 3d 518 (E.D. Va. 2018).

4        In 2019, Think Finance resolved most of this litigation in a landmark settlement. As part of that

5   settlement, Think Finance and its lenders agreed to (1) repay more than $53 million in cash, and (2) forgive

6   more than $380 million of debt owed by consumers who took out loans with these lenders. *See generally*

7   ECF 141, Order, *Gibbs v. Plain Green, LLC*, Case No. 3:17-cv-495 (E.D. Va. Dec. 13, 2019) (granting final

8   approval of the class settlement). In addition to wiping out the debts owed "by more than one million

9   people across the country," the settlement also required the lenders to "promise[] to remove all mention of

10  those loans—most of them technically in default—from borrowers' credit reports." David Rees, *Historic*

11  *settlement sees online lenders wiping out $380 million in debt. Virginians led the way*, The Virginian Pilot (Dec. 12,

12  2019), https://perma.cc/3UTK-HA9Z.

13       Over the course of several years, Named Plaintiffs and the putative Class Members obtained payday

14  loans from one of Think Finance's lenders. Despite the groundbreaking 2019 settlement, Non-parties

15  Consumer Adjustment Company, Inc. ("CACi") and Midwest Recovery Systems, LLC continued to

16  attempt to collect these unlawful debts, including from the Named Plaintiffs and putative Class Members.

17  These collection efforts included reporting the debts to consumer-reporting agencies like Equifax, despite

18  the fact that the loans were, as Plaintiffs allege, obsolete and cancelled by the participants in the Think

19  Finance settlement. Plaintiffs further allege that Equifax impermissibly allowed Midwest to "re-age" the

20  debt, meaning it changed the date of first delinquency of the debt to make it appear more recent and thus

21  eschew some of the protections of the Fair Credit Reporting Act ("FCRA"). (ECF 1 ¶ 1.) The Named

22  Plaintiffs alleged that Equifax's conduct in allowing CACi and Midwest to report the debts violated several

23  aspects of credit-reporting laws, including the FCRA and California's Consumer Credit Reporting Agencies

24  Act ("CCRAA"). Equifax has denied the Named Plaintiffs' allegations and that its conduct violated any

25  laws.

26       After the case was filed, the Parties engaged in significant discovery, in which Equifax responded to

27  written discovery and produced documents. After the initial production, the Parties engaged in significant

meet-and-confer efforts, which resulted in supplemental discovery responses and document production by Equifax. This robust exchange of information fully informed the Parties as to each side's litigation positions, and revealed that Named Plaintiffs would face significant opposition to their claims because of the strength of Equifax's defenses. The Parties engaged in settlement discussions, and after several months of negotiations, attended a private mediation supervised by retired Judge Welsh. After concessions by both sides, the Parties reached a settlement in principle, which was later memorialized in the attached Settlement Agreement.

The Settlement Agreement provides important injunctive and monetary relief to Class Members, while recognizing the significant difficulties that Named Plaintiffs would have faced obtaining a class-action judgment. Although Class Counsel was certainly prepared to continue to litigate rather than accept a settlement that was not in Named Plaintiffs' and the Settlement Classes' best interests, Equifax presented strong arguments in opposition to Plaintiffs' claims. That Settlement was a reasonable strategic decision by Named Plaintiffs is further supported by the fact that the Settlement was negotiated under the supervision and with the assistance of retired Magistrate Judge Welsh and was conducted by experienced class counsel.

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs now seek preliminary approval of the proposed class action settlement and present this memorandum in support of their Motion. Specifically, the Plaintiffs request that the Court preliminarily and conditionally certify the proposed Class and preliminarily approve the proposed class settlement by entering the proposed Order of Preliminary Approval of Class Action Settlement, a copy of which is attached hereto. A final motion and proposed order supporting the fairness of the proposed settlement will be submitted after members of the Settlement Class have received notice and have had an opportunity to object/comment or opt-out, and prior to the Court's Final Approval Hearing. For the reasons set forth in detail below, the proposed settlement is reasonable, fair, and adequate, and should be approved by the Court.

## III.    THE SETTLEMENT AGREEMENT.

The Settlement encompasses one class, two categories of benefits, and a narrow release. The first benefit is a cash payment to every Class Member who submits a valid claim. That payment, $500, is just under half the $100 to $1,000 range of statutory damages the FCRA permits courts to award for willful

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - Case No. 3:21-cv-07727-CRB

4

violations. 15 U.S.C. § 1681n. Second, the Settlement provides injunctive relief for all consumers for whom Equifax reported Plain Green, Great Plains, or MobiLoans debts. Equifax agrees to scrub from Class Members' credit files all references to such loans. And, Equifax will implement procedures to prevent this from happening again in the future. All anyone will release against Equifax are their claims relating to Equifax's inclusion of these loans in consumers' files and Equifax's reporting of those loans to third parties.

### A.      The Settlement Class.

The Settlement Agreement defines the Settlement Class as:

> [T]he U.S. consumers identified by Equifax as having (i) an account pertaining to a Tribal Loan, which was furnished to Equifax by Midwest Recovery and/or CACI, reporting on their Equifax credit file at any time during the Class Period and (ii) had a hard inquiry on their Equifax credit file by a third party during the Class Period and at a time when such an account was reporting on their Equifax credit file.

> Excluded from the Settlement Class are (i) Equifax, any entity in which Equifax has a controlling interest, and Equifax's officers, directors, legal representatives, Successors, Subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over the Lawsuit and the members of their immediate families and judicial staff; and (iii) any individual who timely and validly opts out of the Settlement Class.

(Ex. 1, Agmt. § 3.1.) This class is narrower than the one contained in Plaintiffs' Complaint, but is keyed to the reporting of the Tribal Loans that was the genesis of this case. Yet, the Release Class Members grant to Equifax is not more broad than the claims brought or that could have been brought in this case, and expressly preserves individual claims relating to Equifax's failure to properly investigate consumers' disputes relating to the reporting of the Tribal Loans. (*Id.* ¶ 2.32); 15 U.S.C. § 1681i. These Class Members also retain their right to obtain their attorneys' fees and costs for any future lawsuits. 15 U.S.C. § 1681o.

Moreover, the injunctive relief obtained similarly addresses the conduct that resulted in this lawsuit—the reporting of the Tribal Loans. Equifax has agreed to scrub such loans from consumers' credit files, relief that will not only likely improve their credit standing, but that will also likely eliminate any negative impact from such reporting of these void debts.

### 1.   The Settlement Class obtains significant injunctive and cash relief.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - Case No. 3:21-cv-07727-CRB

5

As described above, discovery and the Parties' early settlement discussions revealed the potential difficulties both sides faced if the litigation continued. Yet, one of Class Counsel's chief goals in bringing this case was to end the reporting of these long-extinguished debts. And while it is no easy road to certify a class alleging claims for violations of Section 1681e(b) of the FCRA because of the core requirement that Plaintiffs show the reporting of inaccurate information, 15 U.S.C. § 1681e(b), Class Counsel nonetheless believed that this case was an exception to that general notion. Given Equifax's opposition arguments, the Named Plaintiffs focused part of their negotiating effort on obtaining injunctive relief for each of these consumers that would stop the reporting of the allegedly illegal loans, which in turn alleviates the myriad of problems that accompanies that reporting, such as the use of it as leverage by debt collectors.

This negotiation led to Equifax agreeing to adopt significant procedure changes. In a Court-ordered injunction, Equifax will delete any accounts pertaining to Plain Green, Great Plains, or MobiLoans debts that were furnished to Equifax by CACi or Midwest, and will delete any account relating to those loans after a consumer disputes them to Equifax. (Ex. 1, Agmt. § 4.1.) This injunctive relief stops the conduct that led to this litigation and will prevent similar harm from occurring again.

Beyond injunctive relief, Equifax has agreed to pay Class Members who submit valid and timely claims $500 each. (Ex. 1, Agmt. § 4.2.) The claims process will require Class Members to affirm they were harmed by Equifax's reporting of the loans at issue (*see* Claim Form), thus confirming they suffered a compensable injury under the FCRA. A claims process is appropriate here given the nature of the claims— that Equifax should have known these loans were illegal and never reported them—because Equifax has meaningful defenses that, if successful, would leave Class Members with no monetary relief at all.

Plaintiffs asserted class claims under three sections of the FCRA, 1681c(a), 1681e(a), and 1681e(b), as well as one claim under the CCRAA seeking injunctive relief. (ECF 1 ¶¶ 86–87, 101–02, 118–19, 134–35.) Had Plaintiffs succeeded in certifying their putative classes and prevailed at trial, including establishing liability and willfulness, and the jury awarded the maximum statutory damages available, they would have recovered $3,000 per Class Member as well as injunctive relief prohibiting the reporting of the loans at issue. Class Counsel believes the amount achieved in settlement is justifiable in light of the significant risks Equifax's defenses present, particularly that it has no liability at all because, in its view, the debts are valid

or, alternatively, it is not required to wade into the question of whether they are valid and may rely on representations from CACi and Midwest that the debts are indeed valid. Against that risky backdrop, Class Counsel and Named Plaintiffs agree that a settlement that pays money now, albeit less than could have been achieved with a complete victory at trial, is appropriate.

There are no other cases that will be impacted by this Settlement.

### 2. Class Administration and Notice Plan.

The Agreement proposes that Continental DataLogix will administer the Settlement. (Ex. 1, Agmt. § 2.3.6.) Continental DataLogix was selected after Equifax obtained three competitive bids for administration of this Settlement, and it provided the lowest estimate for class notice. Administration and notice of the Settlement will cost an estimated $ 96,774, which Equifax will separately pay and therefore will not reduce the Class's recovery. Equifax will also send the Class Action Fairness Act notice at its own expense. (Ex. 1, Agmt. § 15.1.)

Equifax will prepare the Class list, which will include reasonably available contact information for Class Members. (*Id.* § 2.8.) After Preliminary Approval, Continental DataLogix will send individual email or traditional mail notice to all Settlement Class Members on the Class List. (*Id.* § 5.3(b).) Because the Settlement includes a claims process for Class Members to receive their cash benefit, Continental DataLogix will also send Class Members a second notice 60 days later that reminds them of the need to submit a claim. (*Id.* § 5.3(c).)

Continental DataLogix will also prepare and publish the Class Settlement Website. (*Id.* § 2.4.) The Settlement Website will post important settlement documents, like the Settlement Agreement, the Class Notice, and the Preliminary Approval Order, as approved by the Parties or as may be ordered by the Court. (*Id.* § 5.3(a).) Finally, the Settlement Website will include the ability of Class Members to submit claims online rather than by mail. (*Id.* § 4.3(b).)

Continental DataLogix is the settlement administrator on a companion case involving Class Counsel for which Judge Chhabria recently granted preliminary approval, *Meeks v. Consumer Adjustment Co., Inc.*, No. 3:21-cv-03266-VC (N.D. Cal.). Class Counsel has also engaged Continental as administrator for a settlement involving On-Site and tenant screening; a case involving alleged violations of the Electronic

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - Case No. 3:21-cv-07727-CRB

7

Funds Transfer Act; and two cases against the originators of the loans at issue in this case. Those are the instances in which Class Counsel has worked with this administrator over the last two years, and Class Counsel notes that it played no role in the selection of Continental DataLogix in this case, aside from a recommendation. Indeed, Equifax obtained quotes from three settlement administrators and will ultimately engage and separately pay for the costs of the administration.

Based on recommendations from Continental DataLogix and the construction of the notice process and the claims rates shown in the comparable cases identified in Exhibit 2, Plaintiffs anticipate between 8 and 20% of Class Members will submit claims. Continental DataLogix used a 20% projected rate in constructing its bid for this project, and has explained that rate is the industry-wide benchmark for estimated claim redemption. The cases in Exhibit 2 that have class populations nearer to the size of the Settlement Class here, *Watson* and *Patel*, ended up with claim rates of 8 and 9%, so there is evidence suggesting 20% is perhaps a high projection. Given that the Settlement includes not only an initial notice but a 60-day reminder of the need to submit a claim, Plaintiffs believe the 8 to 20% claim rate is achievable.

Any Class Member wishing to object to the Settlement must follow the procedures in Section 9.2 of the Settlement Agreement. Objections must be filed with the Court by the objection date established in the Preliminary Approval Order. (Ex. 1, Agmt. § 9.1.) Unrepresented objectors' notice of objection must include the Class Member's name, address, and telephone number; the name of this litigation, the case number, and a written statement detailing the specific basis for each objection. (*Id.* § 9.2.) Objectors represented by counsel must include the identity of witnesses whom the objecting Settlement Class Member intends to call to testify at the Final Approval Hearing and a detailed description of any evidence the objecting Settlement Class Member may offer at the Final Approval Hearing, as well as copies of any exhibits the objecting Settlement Class Member may introduce at the Final Approval Hearing. (*Id.* § 9.3.)

### 3. Attorneys' fees and Service Awards for Representation of the Settlement Class.

Named Plaintiffs and Class Counsel will ask the Court to approve the attorneys' fees and service award in the Settlement Agreement. The attorneys' fees and service awards were addressed in mediation only after the Parties had agreed to all other substantive elements of the Settlement. The

Settlement Agreement provides that Class Counsel may petition the Court for an award of attorneys' fees, costs, and expenses of up to 33% of the amount Equifax ultimately pays to Class Members who submit valid claims. (Ex. 1, Agmt. § 6.1(b).) This anticipated request will be included in the Class Notice, and Class Counsel will submit its fee petition with sufficient time for Class Members to review and comment on them before the Final Approval Hearing. The Settlement Agreement also permits each Named Plaintiff to apply for a $5,000 Service Award, which Equifax will separately pay if approved by the Court. (*Id.* § 6.2.)

As to the injunctive relief, the Parties negotiated a payment of $300,000 in attorneys' fees for that benefit. Equifax will separately pay this amount, so it will not reduce any funds available to the Class. (*Id.* § 6.1(a).) Again, the Parties' agreement on attorneys' fees, costs, and service award did not occur until after the substantive terms of the Settlement Agreement had been reached.

Most importantly, none of the attorneys' fees or costs will deduct from the recovery of Class Members, as any amounts approved the Court will be paid separately from the amount Class Members will receive.

### 4.    The Settlement is in line with similar cases.

Plaintiffs further provide summaries of three recent settlements of cases involving FCRA claims and also, like here, claims processes. That summary is presented in Exhibit 2. Those cases all pressed similar FCRA claims, although unrelated to loans like those here. They involved accuracy claims under Section 1681e(b), among other claims, and settled with similar claims-made structures as Plaintiffs present here, but with larger amounts presumably because the strength of the plaintiffs' cases brought greater settlement leverage than could be brought to bear here. None of these cases shows a genuine basis for denying preliminary approval of this proposed Settlement.

## IV.    LEGAL STANDARDS FOR PRELIMINARY APPROVAL.

The Ninth Circuit has a strong judicial policy favoring the settlement of class actions. *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1269, 1276 (9th Cir. 1992). The settlement of complex cases greatly contributes to the efficient utilization of scarce judicial resources and achieves the speedy provision of justice. Federal Rule of Civil Procedure 23 requires court approval of a class action settlement, a decision that is committed to the sound discretion of the trial judge.

FED. R. CIV. P. 23(e); *see also In re Mego Fin. Corp.*, 213 F.3d 454, 458 (9th Cir. 2000) (recognizing that the trial judge is "exposed to the litigants, and their strategies, positions, and proof"). "[To] approve a class action settlement under Rule 23, a district court must conclude that the settlement is 'fundamentally fair, adequate, and reasonable.'" *Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752, 2019 WL 387322, at *4 (N.D. Cal. Jan. 30, 2019).

"Approval of a class action settlement requires a two-step process—a preliminary approval followed by a later final approval." *Behfarin v. Pruco Life Ins. Co.*, No. CV 17-5290-MWF-FFMx, 2019 WL 7188575, at *5 (C.D. Cal. Nov. 26, 2019) (quoting *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016)). Preliminary approval is appropriate where the "proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Ma v. Covidien Holding, Inc.*, No. SACV 12-02161, 2014 WL 360196, at *10 (C.D. Cal. Jan. 31, 2014). Courts in this District generally consider at preliminary approval whether a proposed settlement is both procedurally and substantively fair and reasonable. *See, e.g., Behfarin*, 2019 WL 7188575, at *6. The question for the Court is whether the settlement is "within the range of reasonableness." *Ma*, 2014 WL 360196, at *10.

Courts in the Ninth Circuit consider specific factors when approving a settlement. *See e.g., In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 964 (9th Cir. 2011) (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *Avina v. Marriott Vacations Worldwide Corp.*, No. SACV18685JVSJPRX, 2019 WL 8163642, at *5 (C.D. Cal. Oct. 25, 2019). These factors include: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *See Churchill Vill.*, 361 F.3d at 575; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). In addition, courts must scrutinize fee arrangements for potential collusion or unfairness to the class, such as those where plaintiffs' counsel receives a disproportionate distribution of the settlement or where the

agreement contains reverter clauses to distribute remaining funds back to defendants rather than to the class. *See Briseno v. Henderson*, 998 F.3d 1014, 1026-28 (9th Cir. 2021).

Rule 23, as amended in 2018, provides additional guidance to federal courts considering whether to grant preliminary approval of a class action settlement. *See* FED. R. CIV. P. 23(e)(3). Those factors include whether: (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arms' length; (C) the relief provided is adequate; and (D) whether the proposed settlement treats class members equitably relative to each other. Plaintiff will address the factors relevant to both standards, many of which overlap, but taken together, support preliminary approval here.

## V.    ARGUMENT AND AUTHORITIES.

### A.    The Proposed Settlement Warrants Preliminary Approval.

The Settlement, which was reached in the absence of collusion and is the result of good faith, informed, arms'-length negotiation between competent counsel, in conjunction with an experienced retired Federal Judge as mediator, satisfies the standard for preliminary approval in the Ninth Circuit and under Rule 23. *See Hanlon*, 150 F.3d at 1026; FED. R. CIV. P. 23(e). The settlement was reached only after significant written discovery and document production. The Parties engaged in meaningful meet-and-confer efforts, which led to Equifax's production of additional documents and information. This discovery was sufficient such that both Parties were informed as to the case's strengths and weaknesses at the mediation. This supports the conclusion that the posture of the action and the discovery conducted was such that the proposed settlement is fair, reasonable, and adequate.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiffs believe their claims are meritorious and that they would prevail if this case proceeded to trial. Equifax has denied any liability and raised several defenses that could pose a risk if the case were to proceed to trial. And, Equifax also has meaningful arguments against class certification, not to mention the likely Rule 23(f) petition that would follow any certification decision in Plaintiffs' favor. The only thing that is now certain is that if this case continues, the Settlement Class Members will need to wait much longer before receiving any recovery, if they receive any at all. In Class Counsel's experience and informed judgment, the benefits of settling with Equifax outweighed the

risks and uncertainties of continued litigation and post-judgment collection efforts, as well as the attendant time and expenses associated with those efforts. (Ex. 3, Kelly Decl. ¶¶ 15–17.)

### 1. The Settlement is the product of good-faith, informed, arms'-length negotiations.

The Ninth Circuit puts "a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. West Pub'lg Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *see* FED. R. CIV. P. 23(e)(2)(B). A presumption of fairness applies when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for Court approval. *See, e.g., Maine State Ret. Sys. V. Countrywide Fin. Corp.*, No. 2:10-cv-00302-MRP(MANx), 2013 WL 6577020, at *12 (C.D. Cal. Dec. 5, 2013) (citing *Newberg on Class Actions*, § 11.41 (4th ed. 2013)). Moreover, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-05248-MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007); *see also Cohorst v. BRE Props.*, No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923, at *12 (S.D. Cal. Nov. 9, 2011)("[V]oluntary mediation before a retired judge in which the parties reached an agreement-in-principle to settle the claims in the litigation are highly indicative of fairness.").

Here, the Settlement is the result of a private mediation with retired Judge Welsh, supplemented by intensive, arms'-length negotiations between experienced attorneys who are familiar with the legal and factual issues in this Action, as well as class action litigation generally. (*See* Exs. 3, 5, & 6.) This Settlement was reached after significant discovery was completed, with multiple meet-and-confer conferences and supplemental discovery production. There can thus be little doubt that each side knew well the strengths and weaknesses of their respective positions. The Parties' vigorous negotiation of the claims in this action, with the involvement of an experienced mediator, evidences an absence of collusion and the presence of fairness and good faith.

In addition to these facts, the Settlement passes muster under *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011), which identifies the indicia of collusion that courts must look for when a class action settles prior to class certification. *See id.* at 947. Unlike the settlement in *Bluetooth*, this settlement does not reward Class Counsel with a disproportionate amount of the settlement fund or evince

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT -
Case No. 3:21-cv-07727-CRB

12

that Class Counsel sold out the Settlement Class for its own gain. Rather, Class Counsel will be compensated primarily according to the amount Equifax ultimately ends up paying to Class Members, directly tying attorneys' fees to the Class's ultimate, known recovery.

In addition, Settlement Class Members are receiving valuable non-monetary relief, which serves to eliminate any negative outcomes resulting from the challenged conduct. Class Counsel will seek attorneys' fees of $300,000 for the injunctive relief, which Equifax will pay separately and therefore will not reduce the Class recovery. Such an award is eminently reasonable in light of such relief obtained for the size of the Settlement Class. With a Class this large, the injunctive relief is potentially worth millions. Collections accounts have a negative impact on credit scores, so eliminating them improves consumers' credit standing. Nationally known credit-reporting expert Evan Hendricks confirms this in the attached Declaration. (Ex. 4, Hendricks Decl. ¶¶ 33–35.) The FCRA permits such accounts to be reported for seven years, 15 U.S.C. § 1681c(a)(4), so they often hound consumers for lengthy periods. (*Id.* ¶ 50.) Here, approximately 39,000 individuals will have the CACi and Midwest collection accounts permanently removed from their credit histories. Assuming such relief is worth even $50 per consumer in increased credit capacity, as Mr. Hendricks does (*id.* ¶ 52), that total yields $1.95 million in benefits from the injunctive relief. Class Counsel's proposed attorneys' fees of $300,000 is a mere 15% of that value.

There is also no reversionary component: under no circumstances will any funds be returned to Equifax. The absence of indicia of collusion under *Bluetooth* provides further evidence that the Settlement is non-collusive and fair.

## 2.  The Settlement is fair, adequate, and reasonable.

A preliminary review of the relevant factors supports the conclusion that the Settlement falls within the "range of reason" such that the Court should preliminarily approve the Settlement, order that notice be sent to the Settlement Class, and schedule a Final Approval Hearing. The Ninth Circuit has adopted the following eight-factor test for determining whether a settlement is fair, reasonable, and adequate:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and stage of the proceedings; the experience and views of counsel; the presence of a government participant; and the reaction of the class members to the proposed settlement.

*Russell v. Kohl's Dep't Stores, Inc.*, 755 Fed. App'x 605, 608 (9th Cir. 2018) (quoting *Hanlon*, 150 F.3d at 1026). While the Class Members cannot react to the settlement until after notice goes out, the Court can "properly consider[] the *Hanlon* factors in deciding that the settlement [i]s fair, reasonable, and adequate" at the preliminary approval stage. *See Russell*, 755 Fed. App'x at 608 (affirming district court's review of *Hanlon* factors in preliminary approval order).

### a.    The strengths and risks of Plaintiffs' case and likely duration of further litigation.

The Settlement is fair, reasonable, and adequate in light of the strengths and risks of Plaintiffs' case and likely duration of further litigation. In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation marks omitted). The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez*, 563 F.3d at 965).

While confident in the strength of Plaintiffs' claims, Plaintiffs and Class Counsel are also pragmatic and recognize the risks inherent in litigation. (*See* Ex. 3, Kelly Decl. ¶ 16.) Indeed, Equifax was prepared to argue that the loans at issue in this litigation were not truly extinguished by the Great Plains, Plain Green, and MobiLoan settlement, so there is nothing preventing Equifax from reporting them. Equifax also raised other substantive arguments, including that it had relied on CACi and Midwest as reliable sources of account information, so any supposed inaccurate reporting should not be attributed to Equifax. Although Named Plaintiffs were confident that they would overcome these defenses, they recognized that they did pose a litigation risk were the case to proceed.

And even if Plaintiffs are ultimately successful at a trial on their claims, there is uncertainty on appeal. *See, e.g., Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 340 (4th Cir. 2017) (vacating a class judgment of approximately $12 million and dismissing the case); *Anixter v. Home–Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *Berkey Photo, Inc. v.*

*Eastman Kodak Co.*, 603 F.2d 263 (2d Cir.1979) (reversing $87 million judgment after trial); *Hughes Tool Co. v. Trans World Airlines*, 409 U.S. 363 (1973) (reversing $145 million judgment after years of appeals and on a theory that defendant had not raised, or argued). Even if Named Plaintiffs were successful on appeal, it would cause a several-year delay in distributing relief to Class Members should they even prevail. The Settlement avoids these risks and provides real and meaningful relief to the Settlement Class now.

While litigation presents serious risks at many stages, not to mention substantial expense and delay without any guarantee of additional benefit to the Settlement Class, the Settlement provides immediate relief. *Rodriguez*, 563 F.3d at 966, *Curtis-Bauer v. Morgan Stanley & Co., Inc.,* No. C 06-3903 TEH, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."). "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.*, No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016). It is thus "plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co.*, No. 09-cv-1786-L(WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos.*, No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). "[C]onsummating this Settlement promptly in order to provide effective relief to Plaintiff and the Class" eliminates these risks by ensuring Class Members a recovery that is certain and immediate. *Johnson v. Triple Leaf Tea Inc.,* No. 3:14-cv-01570-MMC, 2015 WL 8943150, at *4 (N.D. Cal. Nov. 16, 2015).

These factors thus favor preliminary approval.

### b.    The amount offered in settlement.

The amount of $500 per Class Member is also a reasonable and fair recovery for the Class given the risk associated with further litigation and collection, as well as the strategic considerations Class Counsel had to take into account when determining the best possible case to try before a jury. That amount is roughly half of the range of statutory damages—$100 to $1,000—that a jury might award Plaintiffs should

it conclude Equifax willfully violated the FCRA. 15 U.S.C. § 1681n. Notably, the defenses described above make this case significantly risky to pursue through class certification and trial, particularly against a formidable and experienced defense team.

The dual nature of this Settlement—injunctive relief for all Class Members, and a cash payment to those Class Members who submit claims—is meant to reflect and acknowledge the real risk that Named Plaintiffs faced if they had proceeded to trial. And, as explained above, the Settlement Class Members who submit valid claims will receive a significant portion of potential statutory damages a jury may award in a complete victory for Plaintiffs at trial. *See, e.g.*, *Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."); *Custom LED, LLC v. eBay, Inc.,* No. 12-cv-00350-JST, 2014 WL 2916871, at *4 (N.D. Cal. June 24, 2014) ("[C]ourts have held that a recovery of only 3% of the maximum potential recovery is fair and reasonable . . . .").

### c.    The allocation of the Settlement.

The allocation of the Settlement benefits to Class Members is also fair and reasonable, and the manner of administrating relief will be effective. Payments will be made to those individuals who submit valid claims, and they may do that by mail or through the Settlement website. This method is consistent with, if not an improvement over, the distribution-by-claims process approved in other cases. *See, e.g.*, *In re Facebook Internet Tracking Litig.*, No. 5:12-MD-02314-EJD, 2022 WL 16902426, at *5 (N.D. Cal. Nov. 10, 2022) (finally approving claims process that stood to pay class members who submitted valid claims a portion of settlement fund that depended on the final number of claims submitted); *see also Ramirez v. Trans Union, LLC,* No. 12-CV-00632-JSC, 2022 WL 2817588, at *2 (N.D. Cal. July 19, 2022) (granting preliminary approval to an FCRA settlement that required participants in the claims process to submit documentation that Trans Union actually reported certain information about them). This allocation treats Settlement Class Members equitably because they are all paid the same amount, regardless of the number of claims submitted. *See* FED. R. CIV. P. 23(e)(2)(D).

The proposed method of distributing relief is also effective and appropriate. *See* FED. R. CIV. P. 23(e)(2)(C)(ii). The Parties have agreed upon an experienced Settlement Administrator, who will

automatically mail checks to the Settlement Class Members who submit valid claims, after having confirmed their addresses with the mailing of the initial notice and, with the Claim Form, requesting Class Members to update those addresses as necessary. This process is as likely as any to confirm that there are valid mailing addresses for Class Members to receive their benefit checks.

### d. The extent of discovery completed and stage of proceedings.

The extent of discovery completed and the stage of proceedings certainly favor preliminary approval. This case was settled after significant discovery had been completed, including a supplemental production after a robust meet-and-confer process. Plaintiffs had thus conducted sufficient discovery to permit Class Counsel and the Court to intelligently and fairly evaluate the fairness and adequacy of the Settlement.

### e. The views of Class Counsel.

Class Counsel's view is that this Settlement is a good, fair, and reasonable recovery for the Settlement Class, particularly in light of strategic considerations pertaining to Equifax's available defenses. (Ex. 3, Kelly Decl. ¶ 16.) Class Counsel is experienced in class action litigation, including cases concerning illegal tribal lending. (*See* Exs. 3, 5, and 6.) A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g., Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Thus, this factor supports preliminary approval.

### f. Government participant and Class Member reaction.

There is no government participant and, because the Court has not yet approved the Class Notice, the Settlement Class has not had an opportunity to react, so these factors are neutral. *See Hillman*, 2017 WL 10433869, at *8.

### 3. The Class Representatives and Class Counsel have adequately represented the proposed Class.

Under Rule 23(e)(2)(A), the Court should also consider whether the class representatives and Class Counsel have adequately represented the class, including the nature and amount of discovery undertaken in the litigation. *See Avina*, 2019 WL 8163642, at *6. Here, the Class Representatives have adequately

represented the Settlement Class. They do not have any conflicts with the proposed class and have adequately represented the class in this litigation by, *inter alia*, producing documents, regularly communicating with their counsel about the litigation, and participating in the settlement process. (Ex. 3, Kelly Decl. ¶ 27.)

Class Counsel has also adequately represented Settlement Class Members. Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases, including with respect to the factual and legal issues surrounding tribal lending generally and the loans at issue in this case in particular. (Exs. 3, 5, and 6.) Indeed, Class Counsel has reached multiple settlements with numerous corporate and individual defendants that were involved in Think Finance's tribal lending enterprise, obtaining over $850 million in cash and debt relief on behalf of consumer borrowers nationwide. Class Counsel also has significant experience litigating other payday lending cases, as well as cases involving loans and other financial services and fees more broadly. (*Id.*)

In negotiating the Settlement Agreement, Class Counsel thus had the benefit of years of experience and familiarity with the factual and legal bases for this case, as well as other similar cases. (Ex. 3, Kelly Decl. ¶¶ 9–12.) This understanding of the intricacies of the "rent-a-tribe" lending model prepared Class Counsel to fight this Action to a successful conclusion if necessary, but also equipped them with the knowledge, tools, and perspective to appreciate the benefits of the instant settlement. (*Id.*)

### 4. The proposed Fee and Expense Award is fair and reasonable.

Finally, the terms of the proposed award of attorneys' fees and costs are also fair. *See* FED. R. CIV. P. 23(e)(2)(c)(iii). Class Counsel will file a separate motion seeking approval of their attorneys' fees and costs in an amount not to exceed one-third of the total claims paid, which is in line with the Ninth Circuit's approved method of awarding fees in claims-made cases. *Tait v. BSH Home Appliances Corp.*, No. SACV 10-0711-DOC (ANx), 2015 WL 4537463, at *6 (C.D. Cal. July 27, 2015) (noting that Ninth Circuit law "supports the view that proportionality should be determined with reference to the actual amount paid to the class").

The reasonableness of the requested award is also supported by Class Counsel's incurred lodestar. As noted in the attachments to the Bennett and Kelly Declarations (Exs. 3, 5), Counsel's combined lodestar

1    is currently approximately $171,157.50. That number will likely increase as the settlement process unfolds,

2    with Counsel spending additional time on tasks common in class action settlements—answering questions

3    of Class Members, discussing notice or other issues with the settlement administrator, and the like. Even if

4    Counsel's lodestar remains the same, assuming the Court grants the planned requested fee of 33.33% of the

5    expected payments to 9% of Class Members (1,350 x $500 = $675,000), $224,775, the resulting lodestar

6    multiplier is 1.32, an acceptable multiplier in this Circuit.

7         Separately, the $300,000 in attorneys' fees for the injunctive relief is entirely appropriate. As set

8    forth above, having derogatory collection accounts scrubbed from Class Members' files improves their

9    credit standing almost immediately, granting them significant value even assuming that relief is worth as

10    little as $50 in improved credit capacity. Class Counsel will seek just 15% of even that low value, and that

11    payment will not reduce recovery to Class Members at all.

12         Class Counsel will also seek Service Awards for each of the Named Plaintiffs in the amount of

13    $5,000, which Plaintiffs respectfully submit is reasonable and fair, and well within the range of approval for

14    class action settlements. *See, e.g.*, *Bravo v. Gale Triangle, Inc.*, No. CV 16-03347 BRO (GJSx), 2017 WL

15    708766, at *19 (C.D. Cal. Feb. 16, 2017) ("Generally, in the Ninth Circuit, a $5,000 incentive award is

16    presumed reasonable." (citing *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7

17    (N.D. Cal. Feb. 6, 2012)); *Hickcox-Huffman v. U.S. Airways, Inc.*, No. 10-cv-05193, 2019 WL 1571877, at *2

18    (N.D. Cal. April 11, 2019) (approving service award of $10,000); *Noroma v. Home Point Fin. Corp.*, No. 17-cv-

19    07205, 2019 WL 1589980, at *4 (N.D. Cal. April 12, 2019) (approving service award of $10,000). Again,

20    Equifax will pay these amounts separately, so the awards will not impact Class Members' recoveries.

21         As discussed above, neither final approval, nor the amount to be paid to Class Members are

22    contingent upon approval of the full amount of requested attorneys' fees and costs or Service Award.

23

24         **B.    Certification Of The Settlement Class Is Appropriate.**

25         On a motion for preliminary approval, the parties must also show that the Court "will likely be able

26    to . . . certify the class for purposes of judgment on the proposal." FED. R. CIV. P. 23(e)(1). The Settlement

27    Classes meet all of the requirements of FED. R. CIV. P. 23(a), (b)(2), and (b)(3).

### 1. The Settlement Class Meets the Requirements of Rule 23(a).

The Settlement Classes easily meet Rule 23(a)'s numerosity requirement. The Settlement Class includes approximately 39,000 Class Members, disbursed geographically across the United States. Joinder of these many members for either class is a logistical impossibility. *See, e.g.*, *Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 548-49 (N.D. Cal. 2007) (numerosity is generally satisfied when a class has at least 40 members); *see also Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010) (same).

The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, again, the proposed Settlement Class easily meets the commonality prerequisite as all Settlement Class Members' claims originate from the same conduct of Equifax. All Class Members were subjected to the same credit reporting by CACi and Midwest regarding the allegedly illegal Great Plains, Plain Green, and MobiLoan debts. The theories of liability as to all Settlement Class Members therefore arise from the same practices and present basic questions of law and fact common to all members of the Settlement Class. *See* FED. R. CIV. P. 23(a).

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted); *see also Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 537 (N.D. Cal. 2015) (typicality was met where the named plaintiffs, like class members, were all charged for marked-up broker price opinions by mortgage company). Commonality and typicality tend to merge because both of them "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011). Here, as with the commonality requirement, Named Plaintiffs' claims are typical of the claims of

Settlement Class Members because they arise from the same course of events and alleged conduct by Equifax. In this respect, Named Plaintiffs and Settlement Class Members are all in the same boat as consumers who were subject to Equifax's reporting of the collection accounts; and the only genuine difference from one member to another may be the level of financial harm incurred. Consequently, in seeking to prove their claims, the proposed Class Representatives will necessarily advance the claims of Settlement Class Members.

Finally, the adequacy requirement is satisfied where the class representative will "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). To make this determination, "courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (citing *Hanlon*, 150 F.3d at 1020); *Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 325 (C.D. Cal. 2015).

Here, the Named Plaintiffs have no conflicts of interest with other Class Members, and they and their counsel will and have vigorously prosecuted this case on behalf of the class. (*See* Kelly Decl.) The Named Plaintiffs understand and have accepted the obligations of a class representative; they have adequately represented the interests of the putative class throughout the course of this litigation; and they have retained experienced counsel who have handled numerous consumer protection class actions. Class Counsel has effectively handled numerous consumer protection and complex class actions, typically as lead or co-lead counsel. (*See* Exs. 3, 5, & 6.) Accordingly, the Settlement Class is adequately represented to meet Rule 23's requirements.

### 2.  The Settlement Class satisfies the requirements of Rule 23(b)(3).

Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact common to the members of the class predominate over any question affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

Common questions predominate over any questions affecting only individual members here: any individual differences in loan terms or collection methods for example, "are not material to the claims

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - Case No. 3:21-cv-07727-CRB

21

asserted," which "are all based on the theory that a usurious or otherwise illegal rate of interest was charged." *Brice v. Haynes Invs., LLC.*, No. 18-CV-01200-WHO, 2021 WL 1916466, at *5 (N.D. Cal. Apr. 23, 2021) Thus, such "discrete issues do not undermine predominance." *Id.* Rather, common questions based on the standardized conduct of Equifax—*i.e.*, whether allowing the reporting of the allegedly illegal Great Plains, Plain Green, or MobiLoan debts violated the FCRA—can be resolved using the same evidence for all Class Members and in a single proceeding. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3).") (citation and quotation marks omitted).

Class certification here is also "superior to other available methods for fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). Classwide resolution is the only practical method of addressing the alleged violations at issue in this case. There are thousands of Class Members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving "multiple claims for relatively small individual sums" are particularly well suited to class treatment); *see also Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). Accordingly, the Court should conditionally certify the Settlement Class for settlement purposes.

### C.    The Court Should Approve The Proposed Notice Plan.

#### 1.    The proposed notice plan is adequate and warrants preliminary approval.

Rule 23(e)(1) requires that the court "direct notice is a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e)(1). The manner of the settlement notice need only comply with due-process "reasonableness" requirements, which will vary based on the circumstances of the case. *See Fowler v. Birmingham News Co.*, 608 F.2d 1055, 1059 (5th Cir. 1979).

The notice requirements for the Settlement Class are rigorous yet flexible. Rule Advisory Committee Notes to FED. R. CIV. P. 23, 39 F.R.D. 69, 107 (mandatory notice under subdivision (c)(2) "is designed to fulfill requirements of due process to which the class action procedure is of course subject").

The Court must direct "the best notice that is practicable under the circumstances" to a Rule 23(b)(3) class, which includes "individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). Thus, where the names and addresses of individual class members are available or can be found without imposing an excessive burden or cost, due process requires that those class members receive direct notice. The content of the notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." *Id.*

The Notice Plan proposed here is adequate and meets due process. Class Members will receive individual notice designed to reach all Class Members. To accomplish the contemplated Class Notice, the Settlement Administrator will send direct notice to all Class Members by e-mail at their last-know email address (if available) and by U.S. mail. For mail notice, the Settlement Administrator will mail a copy of the notice to the Class Member's address, which will be checked against the USPS's national change of address database. In addition to individual Direct Notice, the Settlement Administrator will establish the Settlement Website, which will include the Notice and other important case documents. And a toll-free telephone number will be available to Settlement Class Members with questions. The operative notice plan is the best notice practicable and is reasonably designed to reach Settlement Class Members.

The Ninth Circuit has regularly approved class notice in the form of email notice. *See, e.g., In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015) (finding notice satisfied due process and Rule 23(e) where an initial email notice was supplemented by a postcard notice to those whose emails bounced back). Indeed, more and more, courts—including this one—are embracing the use of electronic mail as a means of providing notice, just as Plaintiffs propose here. *See Perks v. Activehours, Inc.*, No. 5:19-cv-05543-BLF, 2021 WL 1146038, at *2 (N.D. Cal. Mar. 25, 2021) (discussing use and adequacy of email notice in context of final approval of settlement); *Senne v. Kansas City Royals Baseball Corp.*, No. 14-cv-00608-JCS, 2021 WL 134889, at *1 (N.D. Cal. Jan. 14, 2021) (discussing plan whereby "notices will be sent

directly to all known members of the Class 1) via email for all class members for whom an email address is available"); *Chalian v. CVS Pharmacy, Inc.*, No. CV 16-08979 AB (AGRx), 2020 WL 7414739, at *2 (C.D. Cal. Nov. 20, 2020) (ordering corrective notice sent by email to class members for whom email addresses are available); *see also Browning v. Yahoo! Inc.*, C04-01463 HRL, 2006 WL 3826714 (N.D. Cal. Dec. 27, 2006) (email notice sent to all available addresses, with a hard copy mailing sent to anyone who did not have an email address on file or where the email was returned as undeliverable); *In re Online DVD Rental Antitrust Litigation*, No. 09-md-02029 (N.D. Cal. Aug. 29, 2011) (direct email notice to all settlement class members, followed by direct notice by standard U.S. Mail to members whose emails bounced back upon up to three attempts at email delivery).

The Settlement's robust notice and administration plan will ensure the maximum number of Class Members will receive notice of the Settlement and the payments to which they are entitled. Moreover, the substance of the notice will fully apprise Class Members of their rights and need to submit a timely claim. The administrator will follow up with a reminder notice after 60 days, providing additional notice to Class Members of their need to submit a claim. Under Rule 23(e), notice to class members "must 'generally describe[ ] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Lane v. Facebook, Inc.*, 696 F. 3d 811, 826 (9th Cir. 2012) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F. 3d 948, 962 (9th Cir. 2009)) (alteration in original). The Notice contains all the critical information required to apprise Class Members of their rights under the settlement, directs them to the settlement website, where they can obtain more detailed information, and provides a toll-free number for Class Members to call with questions. This information undoubtedly provides "sufficient detail" to allow class members with adverse viewpoints to conduct further investigation and "come forward to be heard." *Lane*, 696 F.3d at 826 (holding the sufficient detail standard "does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims"). Accordingly, this notice program satisfies Rule 23(e) and should be approved.

## VI.    CONCLUSION.

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) preliminarily approve the Settlement; (2) enter the Preliminary Approval Order; (3) appoint the Named Plaintiffs as Class

Representatives; (4) appoint Leonard A. Bennett and Craig C. Marchiando of Consumer Litigation Associates, P.C., Kristi Kelly, Andrew Guzzo, and Casey Nash of Kelly Guzzo, PLC, and Matthew Wessler of Gupta Wessler, PLC as Settlement Class Counsel; (5) direct that Notice be distributed to the Settlement Class in substantially the form included with this Motion; (6) approve the appointment of Continental DataLogix as the Settlement Administrator; and (7) and schedule a Fairness Hearing at the Court's earliest availability, but no sooner than 243 days from the date of the granting of this Motion.

Dated: July 14, 2023

Respectfully submitted,

By:   */s/ Craig C. Marchiando*

Craig C. Marchiando, Esq., (SBN 283829)
Leonard A. Bennett, Esq., (pro hac vice)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

Kristi C. Kelly, Esq. (pro hac vice)
Andrew Guzzo, Esq. (pro hac vice)
**KELLY GUZZO PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com

*Attorneys for Plaintiffs and the Class*