Craig C. Marchiando, Esq. (SBN 283829)
Leonard A. Bennett, Esq. (pro hac vice)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

Kristi C. Kelly, Esq. (*pro hac vice*)
**KELLY GUZZO, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyguzzo.com

*Attorneys for Plaintiffs*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ELETTRA MEEKS, JOSEPH DELACRUZ, STEPHANIE LAGUNA, and AMBER LEONARD, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>Defendants. | Case No.: 3:21-cv-07727-CRB<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: May 10, 2024<br>Time: 11:30 a.m.<br>Judge: Hon. Charles R. Breyer<br><br>Date Filed: Oct. 4, 2021<br>Trial Date: None set |

**TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on **May 10, 2024 at 11:30 a.m.**, or as soon thereafter as this matter may be heard, by videoconference before the Honorable Charles R. Breyer, Plaintiffs Elettra Meeks, Joseph Delacruz, Stephanie Laguna, and Amber Leonard respectfully move this court to finally approve the

---

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT -
Case No. 3:21-cv-07727-CRB

Settlement reached in this case, the terms of which are more specifically described in the accompanying Memorandum and Points of Authority filed in support of this Motion.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Settlement Agreement, the Declarations of Leonard Bennett, Kristi Kelly, and Matthew Wessler and exhibits thereto, the pleadings and papers on file in this Action, and any other such evidence and argument as the Court may consider. Defendant Equifax Information Services, LLC, ("Equifax") does not oppose this Motion.

Dated: April 8, 2024

Respectfully submitted,

By: /s/ Craig C. Marchiando

Craig C. Marchiando (SBN 283829)
Leonard A. Bennett (pro hac vice)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

Kristi C. Kelly, Esq. (pro hac vice)
Andrew Guzzo, Esq. (pro hac vice)
**KELLY GUZZO PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com

Matthew Wessler (pro hac vice)
Gupta Wessler PLLC
2001 K Street, NW
Suite 850 North
Washington, DC 20006
Telephone: 202-888-1741
E-mail: matt@guptawessler.com

*Attorneys for Plaintiffs*

# MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................ 2

III. THE ADMINISTRATOR SUCCESSFULLY EXECUTED THE NOTICE PLAN. ...... 4

IV. LEGAL STANDARDS FOR FINAL APPROVAL. ..................................................... 5

V. ARGUMENT AND AUTHORITIES. ........................................................................... 6

   A. Upon Consideration of The Pertinent Factors, The Proposed Settlement Warrants Final Approval. ............................................................................................................... 7

      1. The Class Representatives and Class Counsel have adequately represented the Classes. ........ 7

      2. The Settlement was negotiated at arm's length. ............................................................. 8

      3. The Settlement benefits are more than adequate. .......................................................... 8

      4. All Class Members are treated alike, without favoring anyone. .................................... 10

      5. Government participant and Class Member reaction. ................................................. 11

   B. The Bluetooth Factors Likewise Favor Final Approval .................................................. 11

VI. CONCLUSION ............................................................................................................ 13

# TABLE OF AUTHORITIES

**CASES**

*Anixter v. Home–Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ................................................................................................ 7

*Bailes v. Lineage Logistics, LLC*,
   No. 15-cv-02457-DDC-TJJ, 2016 WL 4415356 (D. Kan. Aug. 19, 2016) .............................. 9

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
   603 F.2d 263 (2d Cir.1979) ..................................................................................................... 7

*Churchill Village, LLC. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ................................................................................................... 6

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ................................................................................................. 6

*Destefano v. Zynga, Inc.*,
   No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ..................................... 11

*Dreher v. Experian Info. Sols., Inc.*,
   856 F.3d 337 (4th Cir. 2017) ................................................................................................... 7

*Ebarle v. Lifelock, Inc.*,
   No. 15-cv-00258-HSG, 2016 WL 5076203 (N.D. Cal. Sept. 20, 2016) ................................ 13

*Edwards v. Andrews*,
   846 F. App'x 538 (9th Cir. 2021) ............................................................................................ 6

*Edwards v. Nat'l Milk Producers Fed'n*,
   No. 11-CV-04766-JSW, 2017 WL 3623734 (N.D. Cal. June 26, 2017) ................................. 6

*Estes v. L3 Techs., Inc.*,
   No. 3:17-cv-02356-H-LL, 2019 WL 141564 (S.D. Cal. Jan. 9, 2019) .................................. 10

*Fla. Educ. Ass'n v. Dep't of Educ.*,
   447 F. Supp. 3d 1269 (N.D. Fla. 2020) ................................................................................... 5

*Franco v. Ruiz Food Prod., Inc.*,
   No. 1:10-cv-02354-SKO, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ............................... 8

*Gibbs v. Centerplate, Inc.*,
   No. 8:17-cv-02187-EAK-JSS, 2018 WL 6983498 (M.D. Fla. Dec. 28, 2018) ...................... 10

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................................................ 6, 7, 11

*In re Bluetooth Headset Prod. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ...................................................................................... 11, 12, 13

*In re Online DVD-Rental Antitrust Litig.*,
 779 F.3d 934 (9th Cir. 2015) ........................................................................................................... 5

*In re Syncor ERISA Litig.*,
 516 F.3d 1095 (9th Cir. 2008) ......................................................................................................... 6

*In re TracFone Unlimited Serv. Plan Litig.*,
 112 F. Supp. 3d 993 (N.D. Cal. 2015) ........................................................................................... 11

*In re: Cathode Ray Tube (Crt) Antitrust Litig.*,
 No. C-07-5944 JST, 2016 WL 3648478 (N.D. Cal. July 7, 2016) ................................................ 13

*Lane v. Facebook, Inc.*,
 696 F.3d 811 (9th Cir. 2012) ........................................................................................................... 6

*Lengel v. HomeAdvisor, Inc.*,
 No. 15-2198-KHV, 2017 WL 364582 (D. Kan. Jan. 25, 2017) ...................................................... 9

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
 221 F.R.D. 523 (C.D. Cal. 2004) .................................................................................................... 6

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
 688 F.2d 615 (9th Cir. 1982) ........................................................................................................... 6

*Ori v. Fifth Third Bank, Fiserv, Inc.*,
 No. 08-432, ECF No. 217 (E.D. Wis. Jan. 10, 2012) ..................................................................... 9

*Pearson v. NBTY, Inc.*,
 772 F.3d 778 (7th Cir. 2014) ........................................................................................................... 5

*Pietras v. Sentry Ins. Co.*,
 513 F. Supp. 2d 983 (N.D. Ill. 2007) .............................................................................................. 9

*Reyes v. Experian Info. Sols., Inc.*,
 No. 20-55909, 2021 WL 1310961 (9th Cir. Apr. 8, 2021) ............................................................. 9

*Roberts v. AT&T Mobility LLC*,
 No. 15-cv-03418-EMC, 2021 WL 9564449 (N.D. Cal. Aug. 20, 2021) ....................................... 11

*Roe v. IntelliCorp Records, Inc.*,
 No. 12-2288, ECF No. 139 (N.D. Ohio June 5, 2014) ................................................................... 9

*Ryals v. HireRight Sols. Inc.*,
 No. 09-625, ECF No. 127 (E.D. Va. Dec. 22, 2011) ...................................................................... 9

*Serrano v. Sterling Testing Sys., Inc.*,
 711 F. Supp. 2d 402 (E.D. Pa. 2010) .............................................................................................. 9

*Spann v. J.C. Penney Corp.*,
 No. SA CV 12-0215 FMO (KESx), 2016 WL 5844606 (C.D. Cal. Sept. 30, 2016) .................... 13

*Speers v. Pre-Employ.com, Inc.*,
 No. 13-1849, ECF No. 83 (D. Or. Feb. 10, 2016) .......................................................................... 9

*Tadepalli v. Uber Techs., Inc.*,
    No. 15-cv-04348-MEJ, 2016 WL 1622881 (N.D. Cal. Apr. 25, 2016) ................................................. 13

*Trans World Airlines*,
    409 U.S. 363 (1973) ............................................................................................................................. 7

*Villaflor v. Equifax Info. Servs. LLC*,
    No. 09-329, ECF No. 177 (N.D. Cal. May 3, 2011) ........................................................................ 9

RULES

Fed. R. Civ. P. 23(e) .................................................................................................................................. 6

## I. INTRODUCTION

Plaintiffs Elettra Meeks, Joseph Delacruz, Stephanie Laguna, and Amber Leonard, individually and on behalf of the proposed Settlement Classes,[1] seek final approval of a proposed Settlement of claims against Defendant Equifax Information Services, LLC. The Settlement Agreement, if approved, will pay each Settlement Class Member who submits a valid claim $500, resolving the claims of Plaintiffs and Settlement Class Members arising from Equifax's alleged violations of state and federal law through its reporting of certain defaulted debts stemming from Great Plains, Plain Green, and MobiLoans internet loans. Apart from these cash payments, the Settlement also includes important and valuable nonmonetary consideration, as Equifax has agreed to certain practice changes—both retrospective and prospective in the form of a Court-ordered injunction—relating to the reporting of the loans at issue.

Beyond the relief to Settlement Class Members, Equifax will separately pay for notice and administration costs, any Service Awards to the Named Plaintiffs and any attorneys' fees and costs the Court may approve as part of the settlement. The Parties have agreed on two components of attorneys' fees for Class Counsel, pending Court approval: (1) an award of $300,000 in attorneys' fees for the injunctive relief achieved; and (2) a percentage of the total amount of claims paid to Settlement Class Members. Equifax has also agreed, again pending Court approval, to pay Service Awards of up to $5,000 per Named Plaintiff.

This valuable relief provided by the Settlement was secured with the assistance of private mediation conducted by retired Judge Diane Welsh of JAMS in Philadelphia, which was supplemented by extensive arms'-length negotiations by experienced and informed counsel. The proposed Settlement terms are fair, reasonable, and adequate. The Settlement provides for adequate compensation to the class considering the litigation and collection risks, maximizes redemption by providing robust notice to Settlement Class Members, including subsequent reminder notices of the need to submit claims, and provides for valuable nonmonetary consideration. Accordingly, Plaintiffs request that the Court (1) finally approve the proposed

---

[1] Unless otherwise specifically defined herein, all capitalized terms have the same meanings as those set forth in the parties' Settlement Agreement ("SA"), attached as Exhibit 1.

Settlement and enter the proposed Order Granting Final Approval; (2) enter the agreed Injunctive Relief Order; (3) award Plaintiffs' and Class Counsel's requested attorneys' fees and Class Representative Service Awards; and (4) dismiss Plaintiff's and Class Members' claims with prejudice.

## II. Background

This litigation arises from alleged violations of state and federal laws related to Equifax's reporting of information relating to online short-term loans that carried triple-digit interest rates. In the early 2000s, a company called Think Finance began offering usurious and illegal high-interest loans over the internet to consumers throughout the United States. Often, these loans charged around 400% APR—more than 40 times the legal limit in states like California. Think Finance employed what has now become known as a "tribal lending model." It purported to form three lending entities—called Plain Green, Great Plains Lending, and MobiLoans—under the laws of the Chippewa Cree, Otoe-Missouria, and Tunica-Biloxi tribes, and then claimed that all of the lending done through these entities was immune from federal and state laws under tribal sovereign immunity.

These companies were in fact little more than fronts. Although the tribal entities received a nominal flat fee from the loans, they had no control over the income, expenses, or day-to-day operations of the business. That control was instead retained by Think Finance, which for nearly eight years operated the entire enterprise and reaped virtually all the profits from the illegal lending operation.

Beginning in 2013, however, Think Finance's lending enterprise unraveled. Federal and state regulators independently brought enforcement actions against the companies, alleging that Think Finance and its affiliates ran a common enterprise designed to offer and collect online installment loans that violated state usury laws. See, e.g., *Commonwealth of Penn. v. Think Fin., Inc.*, 2016 WL 183289, at *1 (E.D. Pa. Jan. 14, 2016). And the operation also faced several private enforcement actions as well. *See, e.g.,* G*ingras v. Think Fin., Inc.,* 922 F.3d 112 (2d Cir. 2019); *Gibbs v. Haynes Invs., L.L.C.*, 368 F. Supp. 3d 901 (E.D. Va. 2019), *aff'd*, 967 F.3d 332 (4th Cir. 2020); *Brice v. Plain Green, L.L.C.*, 372 F. Supp. 3d 955 (N.D. Cal. 2019); *Gibbs v. Plain Green L.L.C.*, 331 F. Supp. 3d 518 (E.D. Va. 2018).

In 2019, Think Finance resolved most of this litigation in a landmark settlement. As part of that settlement, Think Finance and its lenders agreed to (1) repay more than $53 million in cash, and (2) forgive

more than $380 million of debt owed by consumers who took out loans with these lenders. *See generally Gibbs v. Plain Green, LLC*, Case No. 3:17-cv-495 (E.D. Va. Dec. 13, 2019) (granting final approval of the class settlement). In addition to wiping out the debts owed "by more than one million people across the country," the settlement also required the lenders to "promise[] to remove all mention of those loans—most of them technically in default—from borrowers' credit reports." David Rees, Historic settlement sees online lenders wiping out $380 million in debt. Virginians led the way, The Virginian Pilot (Dec. 12, 2019), https://perma.cc/3UTK-HA9Z.

Over the course of several years, Named Plaintiffs and the putative Class Members obtained payday loans from one of Think Finance's lenders. Despite the groundbreaking 2019 settlement, non-parties Consumer Adjustment Company, Inc. ("CACi") and Midwest Recovery Systems, LLC continued to attempt to collect these unlawful debts, including from the Named Plaintiffs and putative Class Members. These collection efforts included reporting the debts to consumer-reporting agencies like Equifax, even though the loans were, as Plaintiffs allege, obsolete and cancelled by the participants in the Think Finance settlement. Plaintiffs further allege that Equifax impermissibly allowed Midwest to "re-age" the debt, meaning it changed the date of first delinquency of the debt to make it appear more recent and thus eschew some of the protections of the Fair Credit Reporting Act ("FCRA"). (ECF 1 ¶ 1.) The Named Plaintiffs alleged that Equifax's conduct in allowing CACi and Midwest to report the debts violated several aspects of credit-reporting laws, including the FCRA and California's Consumer Credit Reporting Agencies Act ("CCRAA"). Equifax has denied the Named Plaintiffs' allegations and that its conduct violated any laws.

After the case was filed, the Parties engaged in meaningful discovery, in which Equifax responded to written discovery and produced documents. After the initial production, the Parties engaged in significant meet-and-confer efforts, which resulted in supplemental discovery responses and document production by Equifax. This robust exchange of information fully informed the Parties as to each side's litigation positions and revealed that Named Plaintiffs would face significant opposition to their claims because of the strength of Equifax's defenses. The Parties engaged in settlement discussions, and after several months of negotiations, attended private mediation supervised by retired Judge Welsh. After

concessions by both sides, the Parties reached a settlement in principle, which was later memorialized in the attached Settlement Agreement.

The Settlement Agreement provides important injunctive and monetary relief to Class Members, which were achieved despite the significant difficulties that Named Plaintiffs would have faced obtaining a class-action judgment. Although Class Counsel was certainly prepared to continue to litigate rather than accept a settlement that was not in Named Plaintiffs' and the Settlement Classes' best interests, Equifax presented strong arguments in opposition to Plaintiffs' claims. That Settlement was a reasonable strategic decision by Named Plaintiffs is further supported by the fact that the Settlement was negotiated under the supervision and with the assistance of retired Magistrate Judge Welsh and was conducted by experienced class counsel.

On August 18, 2023, the Court granted preliminary approval to the proposed class action settlement, in accordance with Federal Rule of Civil Procedure 23. As part of that preliminary approval, the Court: (1) preliminarily approved the proposed Settlement, (2) certified the Settlement Class for settlement purposes, (3) appointed Plaintiffs Elettra Meeks, Joseph Delacruz, Stephanie Laguna, and Amber Leonard as Class Representatives, (4) appointed Kristi Kelly, Andrew Guzzo, and Casey Nash of Kelly Guzzo, PLC, Matthew Wessler of Gupta Wessler, PLC, and Leonard A. Bennett and Craig Marchiando of Consumer Litigation Associates, P.C. as Class Counsel, (5) appointed Continental DataLogix, LLC as the Settlement Administrator, (6) ordered that Class Notice be distributed to the Settlement Class, and (7) scheduled the Final Approval Hearing.

Plaintiffs now seek final approval of the proposed class action settlement. The final approval hearing is scheduled for May 10, 2024. This memorandum supports their motion for final approval, laying out in detail the reasons why the proposed settlement is indeed reasonable, fair, and adequate, and should be fully approved by the Court.

**III.    THE ADMINISTRATOR SUCCESSFULLY EXECUTED THE NOTICE PLAN.**

Frank Barkan, a partner at Continental DataLogix LLC, outlined the process of CAFA Notice Implementation in his declaration (ECF 61 Ex. 1.) Notices were sent via USPS Certified Mail to most of the officials, with exceptions made for the Office of the Nevada Attorney General, where the notice was

sent via email, and the U.S. Department of Justice and the Consumer Financial Protection Bureau, which received their notices via UPS. (*Id.* ¶¶ 6-8.)

The contents of the CAFA Notice Packages were comprehensive, including the Class Action Complaint, the Motion for Preliminary Approval of Class Action Settlement, the proposed Claim Form and Long Form Notice, the Settlement Agreement and Release, and various supporting declarations and proposed orders. (*Id.* ¶ 9.) This ensured CAFA compliance and that the notified officials were well-informed of the settlement's details, facilitating their review and any necessary actions on their part.

Response to the Settlement by Class Members has been extraordinary. As of April 1, 2024, over one-third of the Class Members have responded with valid claims.[2] More specifically, Equifax provided Continental with a mailing list containing names and mailing addresses for 14,662 unique Class Members. 14,499 (98.9%) are presumed to receive some form of notice. 4,919 claims have been identified as valid and submitted within the designated timeframe. There were 10 late submissions and one exclusion, specifically #10860.[3] Additionally, there were 12 deficient claims from individuals on the class list and 256 from those not on the class list alongside 145 duplicate claims. (Ex. 1, Declaration of Craig C. Marchiando ¶¶ 5–7.)

## IV. LEGAL STANDARDS FOR FINAL APPROVAL.

A class action may be settled only with the Court's approval. FED. R. CIV. P. 23(e). "Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether

---

[2] Claims rates typically average 10% and, thus, the rate in this case is three times the typical rate. *Fla. Educ. Ass'n v. Dep't of Educ.*, 447 F. Supp. 3d 1269, 1275 (N.D. Fla. 2020) (noting that "in consumer class actions," the "claims filing rates average 10% of the class") (citing Federal Trade Commission, *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, at 11 (2019)); *see also Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) (noting that "in consumer class actions" that "the percentage of class members who file claims is often quite low," such as the ".0025" percent in the settlement before the court); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (*en banc*) (noting evidence that claims rates in consumer class settlements "rarely" exceed 7%, "even with the most extensive notice campaigns"); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944–45 (9th Cir. 2015) (approving 35 million-member settlement class when only 1.183 million—less than 4%—filed claims; "settlements have been approved where less than five percent of class members file claims").

[3] Class Counsel proposes, with Court approval, that these ten late submissions be paid $500 each from Class Counsel's award of attorneys' fees. Equifax has agreed to this proposal.

final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). At the final approval stage, the primary inquiry is whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026 (citing *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982)).

In conducting its analysis, the Court should be mindful that the Ninth Circuit favors the compromise and settlement of class actions. *See, e.g.*, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice*, 688 F.2d at 625. Ultimately, the decision to approve a class action settlement falls within the Court's discretion. *Edwards v. Nat'l Milk Producers Fed'n*, No. 11-CV-04766-JSW, 2017 WL 3623734, at *8 (N.D. Cal. June 26, 2017), *aff'd sub nom. Edwards v. Andrews*, 846 F. App'x 538 (9th Cir. 2021).

The Court's final-approval analysis requires the balancing of several factors:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e).

## V. ARGUMENT AND AUTHORITIES.

The Court has considered many of the Rule 23(e) factors already in granting preliminary approval to the Settlement. Nothing is different now, and nothing has happened since the Court's grant of

preliminary approval should cause it to question that decision. Plaintiff therefore briefly recaps the *Hanlon* factors.

### A. Upon Consideration of The Pertinent Factors, The Proposed Settlement Warrants Final Approval.

#### 1. The Class Representatives and Class Counsel have adequately represented the Classes.

Nothing can meaningfully be said that this factor is not met. Plaintiffs and their Counsel maintain confidence in the strength of their case, but at the same time are also pragmatic and recognize the risks inherent in litigation. After the initial production, the Parties engaged in significant meet-and-confer efforts, which resulted in supplemental discovery responses and document production by Equifax. This robust exchange of information fully informed the Parties as to each side's litigation positions, and revealed that Named Plaintiffs would face significant opposition to their claims because of the strength of Equifax's defenses. The Parties engaged in settlement discussions, and after several months of negotiations, attended a private mediation supervised by retired Judge Welsh. After concessions by both sides, the Parties reached a settlement in principle, which was later memorialized in the previously filed Settlement Agreement.

The relief attained here is significant. The first benefit is a cash payment to every Class Member who submits a valid claim. That payment, $500, is half the $100 to $1,000 range of statutory damages the FCRA permits courts to award for willful violations. 15 U.S.C. § 1681n. Second, the Settlement provides injunctive relief for all consumers for whom Equifax reported Plain Green, Great Plains, or MobiLoans debts. Equifax has agreed to scrub these loans from consumers' credit files, relief that will not only likely improve their credit standing, but that will also likely eliminate any negative impact from such reporting of these void debts. While there is always the ability to refuse to settle and continue to litigate in hopes of a better recovery, Plaintiffs and their Counsel also know that success at a trial can be short-lived, as there is genuine uncertainty on appeal. *See, e.g., Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 340 (4th Cir. 2017) (vacating a class judgment of approximately $12 million and dismissing the case); *Anixter v. Home–Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir.1979) (reversing $87 million judgment after trial); *Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363 (1973) (reversing $145 million

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT -
Case No. 3:21-cv-07727-CRB

7

judgment after years of appeals and on a theory that defendant had not raised, or argued). And even if Named Plaintiffs were successful on appeal, it would cause a several-year delay for the relief to make it to Class Members. The Settlement avoids these risks and provides real and meaningful relief to the Settlement Classes almost immediately. *See Franco v. Ruiz Food Prod., Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801, at *12 (E.D. Cal. Nov. 27, 2012) (noting that "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results").

Moreover, the Class has received notice of the Settlement, and no one made a substantive comment about any shortcomings by Plaintiffs or their Counsel, or objected to any aspect of the Settlement. (Ex. 1, Marchiando Decl. ¶¶ 7–9.) Without any genuine reason to doubt that the representation has been adequate, the Court should conclude that it was. This factor thus favors final approval.

**2.     The Settlement was negotiated at arm's length.**

There is likewise nothing to undermine the integrity of the negotiation process. The Parties negotiated the settlement through private mediation conducted by retired Judge Diane Welsh of JAMS in Philadelphia, and followed-up those discussions extensive, contentious negotiations by experienced and informed counsel. There is no suggestion of collusion, nor can there be.

**3.     The Settlement benefits are more than adequate.**

As described above, discovery and the Parties' early settlement discussions revealed the potential difficulties both sides faced if the litigation continued. Yet, one of Class Counsel's chief goals in bringing this case was to end the reporting of these long-extinguished debts. And while it is no easy road to certify a class alleging claims for violations of Section 1681e(b) of the FCRA because of the core requirement that Plaintiffs show the reporting of inaccurate information, 15 U.S.C. § 1681e(b), Class Counsel nonetheless believed that this case was an exception to that general notion. Given Equifax's opposition arguments, the Named Plaintiffs focused part of their negotiating effort on obtaining injunctive relief for each of these consumers that would stop the reporting of the allegedly illegal loans, which in turn alleviates the myriad of problems that accompanies that reporting, such as the use of it as leverage by debt collectors.

This negotiation led to Equifax agreeing to adopt significant procedure changes. In a Court-ordered injunction, Equifax will delete any accounts pertaining to Plain Green, Great Plains, or MobiLoans debts

that were furnished to Equifax by CACi or Midwest, and will delete any account relating to those loans after a consumer disputes them to Equifax. (Settlement Agmt. § 4.1.) This injunctive relief stops the conduct that led to this litigation and will prevent similar harm from occurring again.

Beyond injunctive relief, Equifax has agreed to pay Class Members who submit valid and timely claims $500 each. (Settlement Agmt. § 4.2.) 4,919 Class Members submitted valid claims, thereby requiring Equifax to pay almost $2.5 million dollars directly to these 4,919 Class Members. The $500 per class member payment is an extraordinary result. *See Roe v. IntelliCorp Records, Inc.*, No. 12-2288, ECF No. 139 (N.D. Ohio June 5, 2014) (final approval of settlement of alleged inaccurate reporting, and other FCRA claims, providing for $50–$270 net per class member); *Ryals v. HireRight Sols. Inc.*, No. 09-625, ECF No. 127 (E.D. Va. Dec. 22, 2011) (final approval of settlement involving § 1681e(b) claims, providing $15–$200 *gross* per class member recovery); *Ori v. Fifth Third Bank, Fiserv, Inc.*, No. 08-432, ECF No. 217 (E.D. Wis. Jan. 10, 2012) (final approval of settlement of alleged inaccurate mortgage loan reporting, claims-made, each claimant receiving approximately $55); *Speers v. Pre-Employ.com, Inc.*, No. 13-1849, ECF No. 83 (D. Or. Feb. 10, 2016) (final approval of settlement of failure to maintain strict procedures when reporting adverse public record information, resulting in approximately $153 net per class member); *Villaflor v. Equifax Info. Servs. LLC*, No. 09-329, ECF No. 177 (N.D. Cal. May 3, 2011) (final approval of settlement of § 1681e(b) claims, providing credit monitoring for class members with a retail value of $155); *Reyes v. Experian Info. Sols., Inc.*, No. 20-55909, 2021 WL 1310961, at *1 (9th Cir. Apr. 8, 2021) (noting that the proposed settlement resulted in class members receiving "at least $270 after deductions" in a § 1681e(b) case); *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 416 (E.D. Pa. 2010) (approving an FCRA settlement where "Plaintiffs have secured a result which comes close to the minimum range of [statutory] damages without any risk"); *Lengel v. HomeAdvisor, Inc.*, No. 15-2198-KHV, 2017 WL 364582, at *9 (D. Kan. Jan. 25, 2017) (approving, with modifications, a settlement where "each settlement class member will receive at least $50"); *Pietras v. Sentry Ins. Co.*, 513 F. Supp. 2d 983, 985 (N.D. Ill. 2007) (citing "eighteen cases, which settled for an average of $34.59 per class member"); *Bailes v. Lineage Logistics, LLC*, No. 15-cv-02457-DDC-TJJ, 2016 WL 4415356, at *6 (D. Kan. Aug. 19, 2016) (approving an FCRA settlement for $149,205 for a class of 3,430, which correlates to $43.50 per person); *Estes v. L3 Techs., Inc.*, No. 3:17-cv-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT -
Case No. 3:21-cv-07727-CRB

9

02356-H-LL, 2019 WL 141564, at *2 (S.D. Cal. Jan. 9, 2019) (granting final approval of class settlement of "FCRA claims" where "each of the 764 FCRA Class members receives $75"). As one court has noted:

> [A]fter conducting a review of similar FCRA class actions, the Court concludes that the per-class member gross recovery of $100.00 obtained in this case is an ***excellent result***[.]

*Gibbs v. Centerplate, Inc.*, No. 8:17-cv-02187-EAK-JSS, 2018 WL 6983498, at *8 (M.D. Fla. Dec. 28, 2018) (emphasis added), *report & recommendation adopted*, 2019 WL 1093441 (M.D. Fla. Jan. 7, 2019).

Plaintiffs asserted class claims under three sections of the FCRA, 1681c(a), 1681e(a), and 1681e(b), as well as one claim under the CCRAA seeking injunctive relief. (ECF 1 ¶¶ 86–87, 101–02, 118–19, 134–35.) Had Plaintiffs succeeded in certifying their putative classes and prevailed at trial, including establishing liability and willfulness, and the jury awarded the maximum statutory damages available, they would have recovered $3,000 per Class Member as well as injunctive relief prohibiting the reporting of the loans at issue. Class Counsel believes the amount achieved in settlement is justifiable in light of the significant risks Equifax's defenses present, particularly that it has no liability at all because, in its view, the debts are valid or, alternatively, it is not required to wade into the question of whether they are valid and may rely on representations from CACi and Midwest that the debts are indeed valid. Against that risky backdrop, Class Counsel and Named Plaintiffs agree that a settlement that pays money now, albeit less than could have been achieved with a complete victory at trial, is appropriate.

### 4. All Class Members are treated alike, without favoring anyone.

All class members receive equitable treatment with each individual who submits a valid claim being awarded a cash payment of $500. This uniform cash disbursement ensures that every class member benefits consistently from the settlement, adhering to the principles of fairness and equity. The settlement also includes significant injunctive relief for all consumers for whom Equifax reported certain debts, with Equifax agreeing to remove all references to such loans from the class members' credit files and to implement procedures to prevent similar occurrences in the future.

Additionally, the named plaintiffs, who served as class representatives, are proposed to receive Service Awards of $5,000 each. These awards are separate from the benefits provided to the general class

members and are intended to compensate the named plaintiffs for their role in the litigation and the responsibilities they undertook on behalf of the class. This near-identical treatment of Class Members under the Settlement further supports a grant of final approval.

### 5. Government participant and Class Member reaction.

Though not mentioned as a factor under Rule 23(e), Class Counsel believes it should inform the Court regarding governmental participants and Class Member reaction to the Settlement. Equifax sent the notice required by the Class Action Fairness Act to all state and Washington D.C. attorneys general on July 24, 2023. (ECF 61 Ex. 1 ¶ 7) None of these officials voiced any objection to nor commented on the terms of the Settlement, which the Court may consider as positive support for the Settlement. *See Roberts v. AT&T Mobility LLC*, No. 15-cv-03418-EMC, 2021 WL 9564449, at *3 (N.D. Cal. Aug. 20, 2021) (addressing multiple factors as supporting final approval, including the absence of a government objector following CAFA notice). As noted above, only one Class Member excluded themselves from the Settlement and no objections were made to any aspect of the Settlement.

### B. The *Bluetooth* Factors Likewise Favor Final Approval.

In addition to the analysis from *Hanlon*, the Ninth Circuit requires that when a settlement agreement is negotiated before a grant of class certification over defendant's opposition, courts must also satisfy themselves that the settlement did not result from collusion among the parties. *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *8 (N.D. Cal. Feb. 11, 2016) (citing *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011)). Thus, the Court must examine the settlement for three potential "warning signs" of collusion: "(1) whe[ther] class counsel receives a disproportionate distribution of the settlement, or [ ] the class receives no monetary distribution but counsel is amply awarded[;] (2) whe[ther] the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds without objection by the defendant . . . [;] and (3) whe[ther] the parties arrange for fees not awarded to revert to defendants rather than to be added to the class fund." *Destefano*, 2016 WL 537946, at *9. Even where one or more of the signs exists, however, "the presence of these factors is in no way dispositive." *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1007 (N.D. Cal. 2015), (granting final approval to this settlement despite the presence of two of

*Bluetooth*'s three warning signs). Instead, "the *Bluetooth* factors are merely 'warning signs' that indicate the *potential* for collusion" and "the Court is merely obligated to assure itself that the fees awarded in the agreement were not unreasonably high in light of the results obtained for class members." *Id.* (emphasis in original).

Here, the first factor—whether Class Counsel receives a disproportionate distribution of the settlement—cannot be deemed problematic. That is because Class Counsel receives no distribution of the Settlement. Equifax will pay attorneys' fees above and beyond what Class Members receive. The allocation of $300,000 for securing the injunctive relief and an additional $812,130—equivalent to one-third of the $2,461,000 allocated for valid claims—is both reasonable and aligned with the guidelines established by the Ninth Circuit. *Powers v. Eichen,* 229 F.3d 1249, 1256 (9th Cir. 2000)*; see Rodriguez v. D.M. Camp & Sons, No. 1:09-cv-00700-AWI-JLT,* 2013 WL 2146927, at *13 (E.D. Cal. May 15, 2013) ("In the Ninth Circuit, the typical range of acceptable attorneys' fees is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark" and granting fee request of 30% of $675,000 common fund); *see McMorrow v. Mondelez Int'l, Inc.*, No. 17-cv-02327-BAS-JLB, 2022 WL 1056098, at *7 (S.D. Cal. Apr. 8, 2022), *appeal dismissed sub nom. McMorrow v. Huang*, No. 22-55475, 2022 WL 3226187 (9th Cir. June 6, 2022) (awarding attorneys' fees in the amount of one-third of common fund); *Greer v. Dick's Sporting Goods, Inc.,* No. 2:15-cv-01063-KJM/CKD, 2020 WL 5535399, at *8 (E.D. Cal. Sept. 15, 2020) (approving attorney's fees of 33 percent in a class-action settlement); *see also Laffitte v. Robert Half Int'l Inc.,* 231 Cal. App. 4th 860, 871 (Cal. Ct, App. 2014) ("33 1/3 percent of the common fund is consistent with, and in the range of, awards in other class action lawsuits"); *Chavez v. Netflix, Inc.,* 162 Cal. App 4th 43, 66 n.11 (Cal Ct. App. 2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."). Notably, this compensation for Class Counsel is structured to not diminish the individual $500 payments designated for Settlement Class Members, but rather comes as an added amount paid by Equifax, ensuring the total settlement fund remains intact at $2,461,000.

The second factor likewise presents no barrier to final approval. The Parties' Agreement does not contain a "clear sailing" provision. "The dominant risk with clear sailing provisions is that defendants

might persuade class counsel to accept a lower payment to the class in exchange for a promise not to object to a (presumably higher) fee." *In re: Cathode Ray Tube (Crt) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 3648478, at *10 (N.D. Cal. July 7, 2016). The lack of a clear sailing provision ensures that attorneys' fee negotiations are separate from class settlement amounts, upholding transparency and fairness. This safeguard prioritizes class members' interests and prevents their compensation from being undermined for attorneys' fees, aligning with the core principles necessary for class action settlement approval.

Lastly, the agreement does not include a "kicker" provision that would allow unclaimed funds to revert to Equifax. *See, e.g.*, *Ebarle v. Lifelock, Inc.*, No. 15-cv-00258-HSG, 2016 WL 5076203, at *11 (N.D. Cal. Sept. 20, 2016) (noting that "[u]nlike in *In re Bluetooth Headset*, the $68 million fund is nonreversionary" and "[b]ecause there is no 'kicker' contained in the agreement, remaining money in the Settlement Fund does not revert to Defendant and instead is redistributed on a pro rata basis to the Class"); *Spann v. J.C. Penney Corp.*, No. SA CV 12-0215 FMO (KESx), 2016 WL 5844606, at *10 (C.D. Cal. Sept. 30, 2016) (noting that "the entire settlement amount will be distributed, and no funds will revert to defendant"); *Tadepalli v. Uber Techs., Inc.*, No. 15-cv-04348-MEJ, 2016 WL 1622881, at *9 (N.D. Cal. Apr. 25, 2016) ("The absence of a "kicker provision" in the parties' settlement and the fact that the class is receiving 100% of the fees incurred reduces the likelihood that the parties colluded to confer benefits on each other at the expense of class members"); *Larsen v. Trader Joe's Co.,* No. 11-cv-05188-WHO, 2014 WL 3404531, at *8 (N.D. Cal. July 11, 2014), "As to the third factor, the Settlement Agreement provides that unclaimed fees do not revert to Trader Joe's, but will be distributed to class members through a product distribution in Trader Joe's stores"). Here again, this factor does not raise any issues that should stand in the way of final approval of the Settlement.

## VI. CONCLUSION.

This is an excellent settlement. No one disagrees by objection and only one Class Member excluded themselves from the Settlement. The benefits are real and meaningful, and nothing since the Court's grant of preliminary approval supports a reconsideration of that decision. The Court therefore should not.

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) finally approve the Settlement; (2) enter the Final Approval Order; (3) enter the Injunctive Relief Order (4) affirm the

| | |
|---|---|
| 1 | appointment of the Named Plaintiffs as Class Representatives and Plaintiffs' attorneys as Class Counsel; (5) |
| 2 | grant the requested awards of attorneys' fees and Class Representative Service Awards; and (6) dismiss this |
| 3 | action with prejudice. |

Dated: April 8, 2024                                                     Respectfully submitted,

By:    /s/ Craig C. Marchiando

Craig C. Marchiando, Esq., (SBN 283829)
Leonard A. Bennett, Esq., (pro hac vice)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

Kristi C. Kelly, Esq. (pro hac vice)
Andrew Guzzo, Esq. (pro hac vice)
**KELLY GUZZO PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com

Matthew Wessler (pro hac vice)
Gupta Wessler PLLC
2001 K Street, NW
Suite 850 North
Washington, DC 20006
Telephone: 202-888-1741
E-mail: matt@guptawessler.com

*Attorneys for Plaintiffs and the Class*